UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL G. LEMASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:08-cv-00731-WTL-DML |
| ) | |
| SPARTAN TOOL, LLC and ) | |
| THOMAS PRANKA, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This cause is before the Court on a motion to dismiss filed by Defendants Spartan Tool, LLC ("Spartan") and Thomas Pranka ("Pranka"). Plaintiff Michael G. Lemaster brought this suit seeking damages, attorney's fees, interest, and costs for the following allegations: intentional interference with employment relationship (Count I), blacklisting (Count II), invasion of privacy-intrusion (Count III), invasion of privacy-appropriation of name and likeness (Count IV), intentional infliction of emotional distress (Count V), and negligent infliction of emotional distress (Count VI). Defendants have moved to dismiss Counts II through VI pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues have been fully briefed and this matter is now ripe for ruling. For the reasons explained herein, Defendants' motion is **GRANTED**.

### I. BACKGROUND

The facts alleged in the amended complaint are as follow. In November 1994, Lemaster was hired as a District Manager by Spartan, which is engaged in the business of selling commercial sewer draining and cleaning equipment. He later signed a Confidentiality and Non-Competition Agreement ("Non-Compete Agreement") on May 8, 2003, which stated that during

Lemaster's employment and two years thereafter he would not "engage in or assist others to engage in or have any interest in any business which competes with [Spartan]." While working at Spartan, Lemaster opened a cell phone account with Verizon Wireless ("Verizon"). Sometime during his employment, Spartan purchased Lemaster a new cell phone, but the account and cell phone number remained in Lemaster's name. On May 25, 2007, anticipating his forthcoming resignation, Lemaster purchased a new cell phone, activated it, and deactivated the cell phone paid by Spartan.

On June 1, 2007, Lemaster tendered a letter of recommendation to Pranka, Spartan's president, turned in the cell phone that was purchased by Spartan to Spartan representatives, and reminded Pranka that his Verizon cell phone number and account would remain in his name. Lemaster later learned that his Verizon cell phone account was no longer active. Lemaster alleged that Pranka telephoned Verizon and used Lemaster's social security number to close Lemaster's account. Lemaster also alleges that Pranka gave Verizon the impression that he was authorized to close the account and provided other personal matters about Lemaster to circumvent Verizon's need for Lemaster's password.

On or about July 3, 2007, Defendants mailed a letter to Lemaster stating that its investigation revealed that he had committed fraud and had violated or was planning to violate his Non-Compete Agreement by becoming or planning to become a distributor for Service Spring Corporation ("Service Spring"), a direct competitor of Spartan. Lemaster, through his counsel, informed Defendants that he had never worked for or intended to work for Service Spring. On October 1, 2007, Lemaster began working for HD Supply, a company which provides plumbing supplies to plumbing subcontractors. On November 7, 2007, Lemaster's supervisor informed him that Defendants had contacted HD Supply concerning hiring Lemaster

in violation of his Non-Compete Agreement. Lemaster alleges that Defendants knew that neither HD Supply nor Lemaster engaged in or assisted others in engaging in competition with Spartan. On November 12, 2007, counsel for Defendants sent Lemaster's counsel a letter demanding that Lemaster cease and desist from any and all competitive actions in violation of the Non-Compete Agreement.

On November 21, 2007, Spartan filed suit against Lemaster in the United States District Court for the North District of Illinois for allegedly breaching the Non-Compete Agreement. Shortly thereafter, counsel for Lemaster sent a letter to Defendants' counsel stating that HD Supply does not compete with Spartan. On December 7, 2007, HD Supply terminated Lemaster. As a result, Spartan voluntarily dismissed its lawsuit against Lemaster.

## II.  RULE 12(b)(6) STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint, not to resolve the case on its merits. *See Triad Assoc., Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004). The plaintiff must meet the following obstacles to avoid dismissal:

(1) "[T]he complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the ground upon which it rests.'"

(2) "[I]ts allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court."

*E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965 (2007)). In adhering to this notice pleading regime, a plaintiff need not plead facts as long as the defendant has at least

minimal notice of the claim or claims being asserted.  Fed.R.Civ.P. 8; *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).  When ruling on a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them.  *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 730 (7th Cir. 1994).  However, the Court need not ignore facts set out in the complaint that undermine a plaintiff's claims, *see Homeyer v. Stanley Tulchin Assoc.*, 91 F.3d 959, 961 (7th Cir. 1996), nor is the Court required to accept a plaintiff's legal conclusions.  *See Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996); *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir. 1988).

### III.  DISCUSSION

In the instant motion, Defendants argue that Lemaster has failed to allege that he was discharged (with respect to Count II), failed to allege a physical intrusion (with respect to Count III), failed to allege that Defendants misappropriated his name or likeness for their own benefit (with respect to Count IV), failed to allege extreme and outrageous behavior (with respect to Count V), and failed to allege a direct physical impact (with respect to Count VI).  The Court considers each argument in turn.

#### A.  Count II:  Blacklisting

Defendants argue that Lemaster fails to state a claim for blacklisting under the Indiana Blacklisting Statute (the "Blacklisting Statute") because Lemaster voluntarily left his employment with Spartan and thus cannot allege that he was discharged.  Indiana Code § 25-5-3-2 states:

> If any railway company or any other company, partnership, limited liability company, or corporation in this state shall authorize, allow or permit any of its or their agents to black-list any discharged employees, or attempt by words or writing, or any other means whatever, to prevent such discharged employee, or any employee who may have voluntarily left said company's service, from obtaining employment with any other person, or company, said company shall be liable to such employee in such sum as will fully compensate him, to which may be added exemplary damages.

The Indiana Supreme Court has held that "[t]he blacklisting prohibited by section 2 of the act is expressly confined to discharged employés [sic]," not employees who voluntarily leave the company. *Wabash R.R. Co. v. Young*, 69 N.E. 1003, 1005 (Ind. 1904). The ruling was based on Article 4, Section 19 of the Indiana Constitution, which requires that if a subject is addressed in an act which is not expressed in its title, the act is void as to that subject matter which is not expressed in the title. *Id.* at 1004. Thus, despite the statute's use of the language "any employee who may have voluntarily left," the title referred only to discharged employees and was therefore applicable only to discharged employees. *Id.*

Lemaster correctly notes that both the Indiana Court of Appeals and the United States District Court for the Southern District of Indiana have expressed skepticism as to the accuracy of *Young* today. *See Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803 (Ind. Ct. App. 2000) ("[T]he constitutional provision . . . no longer requires that the title of the act express the subject of the act. But despite this change . . ., we are still obliged to follow the precedent established by our supreme court."); *Bridgestone/Firestone, Inc. v. Lockhart*, 5 F. Supp.2d 667 (S.D. Ind. 1998) ("That rigorous application of the 'one subject' requirement stands in sharp contrast to the Indiana court's approach to similar issues in many cases both before and after

*Young*.").[1] Despite such criticism, *Young* has not been overruled. The Seventh Circuit has stated that "federal courts ordinarily take a nonoverruled decision of the highest court of the state whose law governs a controversy by virtue of the applicable choice of law rule to be conclusive on the law of the state." *See MindGames, Inc. v. W. Publ'g Co., Inc.*, 218 F.3d 652, 655 (7th Cir. 2000). This works as a presumption, not a rule, which requires federal courts to "predict how the state's highest court would decide the case, and decide it the same way." *Id.* at 655-656. The Court, however, declines to make such a determination in this case because the complaint fails on other grounds explained below.

Defendants also argue that Lemaster cannot allege that he was prevented from obtaining future employment because Lemaster obtained subsequent employment with HD Supply. Regardless of Lemaster's subsequent position, Defendants did not attempt to prevent Lemaster from obtaining employment. They attempted to enforce the Non-Compete Agreement. The Blacklisting Statute does not apply when the employer is trying to enforce a non-compete agreement. *See Baker v. Tremco, Inc.*, 890 N.E.2d 73, 86 (Ind. Ct. App. 2008) ("Where a former employer has attempted to enforce a noncompete clause against the former employee working for a new employer[,] . . . Indiana Code § 25-5-3-2 does not apply." (*citing Burk*, 737 N.E.2d at 818)). Both parties have stipulated that Lemaster signed a non-compete agreement and that Spartan contacted HD Supply asserting a violation of that agreement. Because Spartan was attempting to enforce the Non-Compete Agreement against Lemaster, the Blacklisting Statute does not apply. The Defendants' motion to dismiss Count II therefore is **GRANTED**.

---

[1]*See, e.g., Orbison v. Welsh*, 179 N.E.2d 727, 731 (Ind. 1962) ("The Title need not contain a complete index or abstract of the contents of an act, but the title sufficiently expresses the subject when upon a liberal construction it gives such notice as to apprise the legislators and the public of the general subject matter of the legislation.").

### B. Count III: Invasion of Privacy - Intrusion

Defendants argue that Lemaster cannot assert a claim for intrusion of seclusion because he has not alleged that Defendants intruded upon his physical solitude or invaded his home. Under Indiana law, the tort of invasion of privacy based on intrusion requires the plaintiff to demonstrate "an intrusion upon the plaintiff's physical solitude or seclusion as by invading his home or conducting an illegal search." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). In order "to rise to the level of tortious conduct, 'the intrusion must be something which would be offensive and objectionable to a reasonable person.'" *Creel v. I.C.E. & Assoc., Inc.*, 771 N.E.2d 1276, 1280 (Ind. Ct. App. 2002) (*quoting Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind. Ct. App. 2000)).

This tort has been construed narrowly by the Indiana courts. *Creel*, 771 N.E.2d at 1280. It has been argued that the tort "embraces intrusion into emotional solace," *Munsell v. Hambright*, 776 N.E.2d 1272, 1283 (Ind. Ct. App. 2002) (*citing Branham v. Celadon Trucking Serv., Inc.*, 744 N.E.2d 514, 524 (Ind. Ct. App. 2001)), but no Indiana cases exist "in which a claim of intrusion was proven without physical contact or invasion of the plaintiff's physical space such as the plaintiff's home." *Creel*, 771 N.E.2d at 1280. Lemaster alleged Pranka impermissibly used his social security number and other personal information to terminate his account with Verizon, yet he alleged no physical contact or invasion of his physical space. These allegations do not support a claim for invasion of privacy under current Indiana law. Therefore, the Defendants' motion to dismiss Count III is **GRANTED**.

### C. Count IV: Invasion of Privacy - Appropriation of Name and Likeness

Defendants next contend that Lemaster has failed to state a claim for invasion of privacy through appropriation of likeness. The tort of invasion of privacy also includes the appropriation of another's name or likeness. *Creel*, 771 N.E.2d at 1280. The tort of appropriation "exists where the defendant appropriates the plaintiff's name or likeness for the defendant's benefit or advantage." *Id.* (*citing Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 601 (Ind. 2001)). The phrase "name or likeness" embraces the concept of a person's character, and the words are used together because of their similar purpose of identification. *Felsher*, 755 N.E.2d at 601.

Lemaster alleges that Defendants misappropriated his name and likeness by using his social security number and other personal information to close Lemaster's personal Verizon account. He also claims that Defendants took these actions to further their efforts to blacklist him, prevent him from being able to obtain subsequent employment, and cause him emotional distress. However, these allegations do not suggest that the Defendants were seeking to obtain any benefit or advantage for themselves when they used Lemaster's information to close his account. Accordingly, Lemaster has failed to state a claim for invasion of privacy by appropriation of name and likeness and the Defendants' motion to dismiss Count IV is **GRANTED**.

### D.  Count V:  Intentional Infliction of Emotional Distress

Defendants argue that Lemaster's claim of intentional infliction of emotional distress is deficient and should be dismissed because it fails to allege the extreme and outrageous behavior necessary to state such a claim. Under Indiana law, the tort of intentional infliction of emotional distress is defined as "'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another . . . .' It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Cullison*, 570

8

N.E.2d at 31. Plaintiff must prove that "a defendant (1) engages in extreme and outrageous conduct that (2) intentionally or recklessly (3) causes (4) severe emotional distress to another." *Branham*, 744 N.E.2d at 523. "The requirements to prove this tort are rigorous." *Id.* It is "found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind. . . . In the appropriate case, the question can be decided as a matter of law." *Id.*

Lemaster claims that Defendants intentionally interfered with his employment relationship even though they were aware that HD Supply did not directly compete with their business. Lemaster further alleges that Defendants invaded his privacy by using confidential information to terminate his cell phone account. Although few Indiana cases exist in regards to a claim for intentional infliction of emotional distress in the employment context, other jurisdictions have been restrictive in this area. *See Van Stan v. Fancy Colour & Co.*, 125 F.3d 563 (7th Cir. 1997) (in the employment context, Illinois courts have denied recovery, even if conduct was reprehensible, if it was linked to an employer's legitimate interest); *Cox v. Keystone Carbon Co.*, 861 F.2d 390 (3rd Cir. 1988) (extremely rare to find conduct in the employment context meets the level of outrageousness necessary under this tort); *Islami v. Covenant Med. Ctr., Inc.*, 822 F. Supp. 1361 (N.D. Iowa 1992) (even assuming defendants intentionally interfered with plaintiff's business relationship, such conduct does not rise to the level of outrageous conduct). While these jurisdictions are not binding on the Court, they are persuasive in illustrating that claims for intentional infliction of emotional distress in the employment context are far less likely to constitute extreme and outrageous conduct under this tort.

In *Bradley v. Hall*, 720 N.E.2d 747 (Ind. App., 1999), the case relied on by Lemaster, the plaintiff's supervisor allegedly harassed her, shouted at her, criticized her in front of other

9

employees, and misled her about her job security. The supervisor also allegedly went beyond the employment context, commenting on and ridiculing the plaintiff in regards to personal and private matters concerning plaintiff's health and physical condition. The Court concluded that reasonable minds could differ as to whether or not these actions combined amounted to extreme and outrageous conduct. *Bradley*, 720 N.E.2d at 753. Even assuming Lemaster's allegations to be true, Defendants' actions in attempting to enforce the Non-Compete Agreement and using Lemaster's social security number to cancel his personal cell phone account pertained solely to business matters. The Court finds that as a matter of law the Defendants' actions do not amount to conduct that is so extreme and outrageous as to "exceed all bounds usually tolerated by a decent society." Therefore, the Defendants' motion to dismiss Count V is **GRANTED**.

### E.  Count VI: Negligent Infliction of Emotional Distress

Finally, Defendants contend that Lemaster has failed to plead the necessary elements of negligent infliction of emotional distress. More specifically, Defendants believe Lemaster has failed to plead breach of duty and an impact of the required nature and severity. In a claim for negligent infliction of emotional distress under Indiana law, a plaintiff must show

> distress is accompanied by and results from a physical injury caused by an impact to the person seeking recovery. The mental injury must be the natural and direct result of the plaintiff's physical injury. This rule is known as the "impact rule" because of the requirement that there be some physical impact on the plaintiff before recovery for mental trauma will be allowed. This has been the rule in Indiana for nearly one hundred years . . . . The rule, as applied in Indiana, has three elements: (1) an impact on the plaintiff; (2) which causes physical injury to the plaintiff; (3) which physical injury, in turn, causes the emotional distress.

*Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991) (citations omitted). *Schuamber* modified this rule by holding that now "the impact need not cause a physical injury to the plaintiff and the emotional trauma suffered by the plaintiff need not result from a physical injury

10

caused by the impact." *Conder v. Wood*, 716 N.E.2d 432, 434 (Ind. 1999). This modified impact rule still "maintains the requirement of a direct physical impact." *Id.* Lemaster did not sustain the direct physical impact necessary under this rule by being terminated from HD Supply and having his cell phone account cancelled. *See Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251 (Ind. Ct. App. 2002) (plaintiff, by being terminated, did not sustain direct physical impact necessary to maintain action for negligent infliction of emotional distress).

Lemaster notes that Indiana courts have recognized an exception to the modified impact rule in "cases where the defendant's conduct was 'inspired by fraud, malice, or like motives involving intentional conduct." *Schuamber*, 579 N.E.2d at 454 (*quoting Naughgle v. Feeney-Hornak Shadeland Mortuary, Inc.*, 498 N.E.2d 1398, 1301 (Ind. Ct. App. 1986)). The cases to which Lemaster cites involve intentional abduction of a child (*Montgomery v. Crum*, 161 N.E. 251 (Ind. 1928)), false imprisonment and malicious prosecution (*Lazarus Dep't Store v. Sutherlin*, 544 N.E.2d 513 (Ind. Ct. App. 1989)), and fraudulent concealment of liens and encumbrances (*Groves v. First Nat'l Bank of Valparaiso*, 518 N.E. 2d 819 (Ind. Ct. App. 1988)). Lemaster has made no allegation of fraud against Defendants and none of their alleged conduct was so malicious and willful, as demonstrated by the cited cases, as to fall under this exception. Furthermore, Indiana has "generally refused to allow these damages when there has been only an economic loss." *Ketchmark v. N. Ind. Pub. Serv. Co.*, 818 N.E.2d 522, 524 (Ind. Ct. App. 2004). Although economic loss may cause emotional distress, it cannot be compared to the loss of a loved one. *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 127 (Ind. Ct. App. 1992). Lemaster's alleged emotional distress has arisen from the loss of his employment with HD Supply and the unauthorized closing of his cell phone account. While Lemaster may have in fact

suffered emotional distress due to these events, Indiana law has not found such loss and resulting trauma "sufficiently serious" to justify imposing liability on Defendants. Accordingly, the Defendants' motion to dismiss Count VI is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Counts II through VI of Plaintiff's First Amended Complaint (Docket No. 18) is **GRANTED**.

SO ORDERED: 03/16/2009

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Richard W. McMinn
HASKIN LAUTER & LaRUE
rmcminn@hlllaw.com

Jeremiah J. Posedel
McGUIRE WOODS, LLP
jposedel@mcguirewoods.com

Kenneth E. Lauter
HASKIN LAUTER & LaRUE
klauter@hlllaw.com

Gail Chaney Kalinich
McGUIRE WOODS, LLP
gkalinich@mcguirewoods.com